## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AINA, et al.,<br>        Plaintiffs, | :<br>:<br>: |
| v. | :   **CIVIL ACTION NO. 13-2702**<br>: |
| | : |
| HOWARD-VITAL, et al.,<br>        Defendants. | :<br>:<br>: |

### MEMORANDUM OPINION

**RUFE, J.**                                                             **OCTOBER 8, 2013**

Tinuke Aina and Dr. Ayodele Aina, her husband, assert claims against defendants

Michelle Howard-Vital, Suzanne Phillips, Joanne Harris, Pamela Hadley, and Cheyney

University of Pennsylvania. Mrs. Aina states that the individual defendants caused her to be fired

from her job as a Certified Registered Nurse Practitioner ("CRNP") at Cheyney's Health Center

in retaliation for exercising her First Amendment right to free speech, in violation of 42 U.S.C. §

1983. She further alleges that they injured her reputation in violation of the same statute. Mrs.

Aina also claims that Dr. Howard-Vital, Dr. Phillips, Ms. Harris, and Dr. Hadley committed the

tort of defamation, and that these individuals together with Cheyney University violated 42 Pa.

C.S. § 1422, Pennsylvania's Whistleblower statute. Dr. Ayodele Aina asserts that Dr. Howard-

Vital, Dr. Phillips, and Ms. Harris caused him economic harm and emotional distress by firing

Mrs. Aina and that she was fired because Dr. Aina exercised his own right to free speech, again

violating 42 U.S.C. § 1983. Both plaintiffs claim that the relevant defendants acted in concert in

depriving them of their constitutional rights, in violation of 42 U.S.C. § 1985.

Except with respect to the Pennsylvania Whistleblower claim, Defendants move to

dismiss the complaint for failure to state a claim on which relief may be granted pursuant to

Federal Rule of Civil Procedure 12(b)(6). For the reasons discussed below, the Motion will be granted in part and denied in part.

## I.      Factual Background[1]

Mrs. Aina was a CRNP at Cheyney University's Health Center for about six years. As a CRNP, she provided primary medical care for individual students, working under the supervision of medical doctors. These doctors were supposed to, and at times did, enter into collaborative agreements with Mrs. Aina that gave her authority to write prescriptions for students when physicians were unavailable.

Defendant Dr. Phillips was Mrs. Aina's administrative supervisor and was directly responsible for the operations of the health center. Defendant Dr. Howard-Vital was the president of Cheyney. Defendant Ms. Harris was Cheyney's Director of Human Resources. Defendant Dr. Hadley, the only individual defendant who was not a Cheyney employee, was a medical doctor hired as a contractor to work in the Health Center. She supervised Mrs. Aina on a day-to-day basis.

Throughout her time working at Cheyney, the Health Center was beset by problems that resulted in the provision of inadequate care to patients. For example, Defendants failed to inform the doctors who worked at Cheyney that they were supposed to enter into collaborative agreements with Mrs. Aina. The doctors that Defendants hired kept irregular schedules, failed to show up to work during their office hours, and failed to make their scheduled appointments. There were even times when the Health Center lacked any medical doctor on staff.

The Health Center also lacked an adequate staff of nurse technicians, nurse assistants, and clerical support, and it did not keep a reasonable supply of medical equipment or medicines,

---

[1] The facts are drawn from the Plaintiffs' complaint and are accepted as true for the purposes of this Memorandum Opinion. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

2

even basic ones. Mrs. Aina kept Drs. Phillips and Howard-Vital aware of these shortcomings. Rather than remedy these problems, Cheyney compounded them by hiring as contractor Dr. Hadley. She failed to provide Mrs. Aina with a schedule, regularly missed appointments, and kept the health center badly stocked with basic medical needs. These failings led to serious, chronic health problems among students.

Mrs. Aina informed her superiors, including all the individual defendants, of the problems plaguing the Health Center. She also complained to her husband and Nancy Jones, whose job was to help move the Health Center to a new building (a plan Mrs. Aina vocally opposed); to Greg Benjamin, Cheyney's Director of Alumni Relations; to Scott Gibson, the Director of the Health Center at Indiana University of Pennsylvania; to Dr. Phillps's administrative assistant; and to Monique Baylor, Cheyney's director of Business Support Services.

Not only did Mrs. Aina make these complaints, but her husband, a tenured professor of mathematics at Cheyney, a member of the Leadership Committee of the Association of Pennsylvania State College and University Faculties ("APSCUF") at Cheyney, and a member of the Cheyney Faculty Senate, pressed them as well. Instead of taking the Ainas' suggestions and criticisms to heart, Defendants engaged in a scheme to silence Mrs. Aina—and thereby to retaliate against Dr. Aina—threatening her with disciplinary action and termination of her employment. Mrs. Aina was terminated on December 21, 2012.

After Mrs. Aina's employment terminated, she filed a grievance through her union. After that grievance was filed, defendants filed false charges against Mrs. Aina before the Pennsylvania Board of Nursing, accusing Mrs. Aina of practicing as a CRNP without entering into a collaborative agreement with a doctor and of administering tests to students without a

license. These falsehoods damaged Mrs. Aina's professional reputation and caused her severe emotional distress. This lawsuit followed.

## II.     Jurisdiction

This Court has jurisdiction to hear the Ainas' claims based on 42 U.S.C. §§ 1983 and 1985 pursuant to 28 U.S.C. § 1331, since they arise under the Constitution and laws of the United States. It has jurisdiction to hear Mrs. Aina's state-law claims under 28 U.S.C. § 1367 because the state-law claims are so related to the federal claims that they form a part of the same case or controversy under Article III of the Constitution.

## III.    Standard of Review

In order to survive a motion to dismiss, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[2] Additionally, it "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[3] A plaintiff who survives a motion to dismiss for failure to state a claim on which relief may be granted states facts sufficient to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"[4]

## IV.    Mrs. Aina's § 1983 Claims

### A. Retaliation

In order to state a claim for retaliation under § 1983, "a public employee must demonstrate that (1) he or she engaged in activity that is protected by the First Amendment, and (2) the protected activity was a substantial factor in retaliatory action by the employer."[5] The first

---

[2] Fed. R. Civ. P. 8(a)(2).

[3] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

[4] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

[5] *Morris v. Philadelphia Hous. Auth.*, 487 F. App'x 37, 39 (3d Cir. 2012).

4

inquiry is a question of law, the second of fact.[6] To establish that the activity was protected by the First Amendment, the plaintiff must show that he or she spoke as a citizen and on a matter of public concern. After making this showing, the plaintiff must persuade the court that the employee's interests "as a citizen, in commenting upon matters of public concern" outweighs "the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees."[7]

The crucial question here is whether Mrs. Aina spoke "as a citizen." She did not do so if she spoke "pursuant to [her] official duties."[8] Whether speech is made pursuant to one's official "duties is a mixed question of fact and law."[9] The Third Circuit has "consistently held that complaints up the chain of command about issues related to an employee's workplace duties— for example, possible safety issues or misconduct by other employees—are within an employee's official duties."[10] By contrast, a "First Amendment retaliation claim insofar as it is premised on [a plaintiff's] advocating and supporting ideas, principles and projects," will not be dismissed.[11]

Mrs. Aina's official duties included "developing and evaluating comprehensive primary medical treatment plans for individual Cheyney students according to established treatment protocols created by Cheyney-affiliated physicians."[12] Moreover, she was responsible for

---

[6] *Id.*

[7] *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968).

[8] *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006).

[9] *Foraker v. Chaffinch*, 501 F.3d 231, 240 (3d Cir. 2007).

[10] *Morris v. Philadelphia Hous. Auth.*, 487 F. App'x 37, 39 (3d Cir. 2012).

[11] *Hill v. Borough of Kutztown*, 455 F.3d 225, 242 (3d Cir. 2006).

[12] Compl. at ¶ 23.

cooperating with physicians who were "expected to enter into written collaborative agreements with Mrs. Aina to give her prescriptive authority."[13]

In evaluating whether Mrs. Aina has stated a claim under § 1983, "[t]he court . . . cannot make a superficial characterization of the speech or activity taken as a whole . . . . Instead, it must conduct a particularized examination of each activity for which the protection of the First Amendment is claimed."[14] Mrs. Aina made repeated complaints about the conditions at the health center to many people. Some of these complaints were clearly made "up the chain of command about issues related to an employee's workplace duties" and thus are not protected by the First Amendment.[15] For example, her complaints to Dr. Hadley, the attending physician under whom Mrs. Aina worked,[16] that the Health Center lacked necessary equipment,[17] that Dr. Hadley missed an appointment,[18] and that she failed to provide Mrs. Aina with her phone number,[19] are all instances of speech made up the chain of command and pursuant to Mrs. Aina's official duties.

Similarly, Mrs. Aina's complaints to Ms. Harris, the Director of Human Resources, were workplace grievances made to the appropriate person to handle work-related problems.[20] Mrs. Aina's contact with Marcia Robinson, the Assistant Director of Human Resources, fails for the

---

[13] *Id.* at ¶ 26.

[14] *Johnson v. Lincoln Univ. of Com. Sys. of Higher Educ.*, 776 F.2d 443, 451 (3d Cir. 1985).

[15] *Morris*, 487 F. App'x at 39.

[16] Compl. at ¶¶ 35–36

[17] *Id.* at ¶ 40.

[18] *Id.* at ¶ 70.

[19] *Id.* at ¶ 75.

[20] *Id.* at ¶¶ 47, 75.

6

same reason.[21] And her repeated complaints to Dr. Howard-Vital, the President of Cheyney University, expressing her frustration that her superiors were not doing their job well,[22] are also "comments . . . made to her employer about fellow employees," and thus were not made in Mrs. Aina's capacity as a citizen but rather pursuant to her duties to develop, evaluate, and carry out medical treatment plans.[23] Her complaints to Dr. Howard-Vital's assistant are similarly unprotected.[24]

Mrs. Aina's complaints to Nancy Jones were also made pursuant to her duties as an employee. According to the complaint, Dr. Howard-Vital directed Ms. Jones to contact Mrs. Aina to "plan for what Ms. Jones described as a 'new and improved' health center."[25] Ms. Jones emailed Mrs. Aina, who responded with detailed criticisms of the operation of the Health Center.[26] In replying to a specific inquiry directed by the University President about how to improve the Health Center, Mrs. Aina was fulfilling an employment duty, namely, a specific request for information. Although Ms. Jones's inquiries were not part of an internal investigation, this Court's ruling is consistent with the Third Circuit's reasoning that giving information to internal investigators constitutes speech pursuant to one's official duties.[27]

Mrs. Aina complained outside of the chain of command to Monique Baylor, Director of Business Support Services, but her complaint was about Dr. Hadley's availability and her failure

---

[21] *Id.* at ¶ 79.

[22] *Id.* at ¶¶ 61, 75, 80.

[23] *Cicchiello v. Sec'y Pennsylvania Dep't of Corr.*, 458 F. App'x 117, 120 (3d Cir. 2012).

[24] Compl. at ¶ 79.

[25] *Id.* at ¶ 49

[26] *Id.* at ¶¶61–63.

[27] *Fulmer v. Pennsylvania*, 460 F. App'x 91, 93 (3d Cir. 2012).

7

to provide Mrs. Aina with a phone number.[28] But such narrow complaints are "about issues related to an employee's workplace duties—for example, possible safety issues or misconduct by other employees," and thus within her official duties, even if not strictly up the chain of command.[29]

Mrs. Aina has alleged some speech made outside of her official duties. Specifically, she complained to Cheyney's Director of Alumni Relations, Greg Benjamin, about the conditions at the Health Center and Dr. Hadley's dereliction of her duties.[30] The Court cannot now hold as a matter of law that these complaints were made pursuant to Mrs. Aina's job responsibilities; Mr. Benjamin was not in a supervisory relationship with Mrs. Aina and was not a person to whom a nurse as employee would have brought a complaint about conditions at work. Additionally, Mrs. Aina repeated her complaints about Dr. Hadley's absences to Scott Gibson, Director of the Health Center at Indiana University of Pennsylvania, a person wholly unaffiliated with Cheyney.[31] Finally, she made her complaints known to her husband.[32] Although, as defendants note, he had some official duties to Cheyney, it reasonable at this stage to infer that Mrs. Aina spoke to him as wife to husband rather than as employee to ombudsperson.  These are the only instances of speech alleged in the Complaint that Mrs. Aina made as a citizen.

Whether Mrs. Aina made this speech as a citizen, however, does not end the inquiry. The speech must be on a matter of public concern. According to the complaint, she told Mr. Benjamin that 1) "Dr. Hadley had failed to submit a schedule of her hours;" 2) there was a "dire

---

[28] *Id.* at ¶ 75.

[29] *Morris v. Philadelphia Hous. Auth.*, 487 F. App'x 37, 39 (3d Cir. 2012).

[30] Compl. at ¶¶56–58.

[31] *Id.* at ¶ 79.

[32] *Id.* at ¶ 51.

lack of available medications and testing kits in stock at the health center"; 3) Dr. Howard-Vital and Dr. Phillips failed "to take appropriate action to address these concerns"; 4) she was concerned "about the lack of administrative support for the health center."[33] The other speech she made as a citizen was to repeat "her concerns about the poor conditions at Cheyney's Health Center including the lack of supplies and the absences of Dr. Hadley" to Mr. Gibson and to report "administrative lapses" to her husband.[34]

Where Mrs. Aina has alleged that she sought to "bring to light actual or potential wrongdoing or breach of the public trust on the part of . . . officials,"[35] she may have spoken on a matter of public concern. Moreover, the Third Circuit "has repeatedly found that public employees' criticism of the internal operations of their places of public employment is a matter of public concern."[36]

At this stage, accepting all the facts as pleaded in the complaint as true and drawing all reasonable inferences in favor of Plaintiff, Mrs. Aina has "put forth allegations that raise a reasonable expectation that discovery will reveal evidence" that her criticisms of the Health Center were, in context, matters of public concern.[37] She has pleaded that she complained to anyone who would listen, and some who would not, that Dr. Hadley was derelict in her duties and that the Health Center was inadequately resourced. The Health Center is a division of a public university, and its internal operations are matters of public concern.

---

[33] *Id.* at ¶¶ 57–58.

[34] *Id.* at ¶ 51.

[35] *Czurlanis v. Albanese*, 721 F.2d 98, 104 (3d Cir. 1983) (internal quotation marks omitted).

[36] *Zamboni v. Stamler*, 847 F.2d 73, 77 (3d Cir. 1988).

[37] *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009).

Although Mrs. Aina has made enough of a showing that her speech was on a matter of public concern to survive a motion to dismiss, the court notes that "[d]etermining whether speech is a matter of public concern involves an examination of the content, form, and context of a given statement as revealed by the whole record."[38] Although the question of whether Plaintiff spoke on a matter of public concern is an issue of law for the Court,[39] there needs to be a "whole record" for the Court to examine before ruling definitively.[40] In other words, Defendants may raise at summary judgment the issue of whether Mrs. Aina's speech was on a matter of public concern if in the context of a developed record a colorable argument appears that it was not.

After establishing whether speech is on a matter of public concern, the Court must "strike a 'balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'"[41] The outcome of a court's *Pickering* balance is again a question of law, but one that in this case requires a more robust record to determine whether Mrs. Aina's "speech caused such interference with the effective functioning of the public employer's enterprise as to justify the action taken in response."[42] For the purposes of this Memorandum Opinion, therefore, the Court holds that Mrs. Aina's complaints to Mr. Benjamin, Mr. Gibson, and Dr. Aina were protected speech.

---

[38] *Swineford v. Snyder Cnty. Pa.*, 15 F.3d 1258, 1271 (3d Cir. 1994).

[39] *Connick v. Myers,* 461 U.S. at 148 n.7,

[40] *Cf. Johnson v. Lincoln Univ. of Com. Sys. of Higher Educ.*, 776 F.2d 443, 453 (3d Cir. 1985) (remanding for development of a record); *Zamboni v. Stamler*, 847 F.2d 73, 78 (3d Cir. 1988) ("[I]n this case the record is insufficiently developed on the disruption issue.").

[41] *Zamboni*, 847 F.2d at 77 (alteration in original) (quoting *Pickering*, 391 U.S. at 568).

[42] *Id.* at 78 (internal quotation marks omitted).

10

Having established that Mrs. Aina has stated that she engaged in protected speech, the

Court must also decide whether she has sufficiently alleged retaliatory conduct. She has done so

only as far as her complaints to Mr. Benjamin and Dr. Aina are concerned. She has not alleged

that anyone other than Mr. Gibson was aware of her correspondence with him; therefore she

could not have been retaliated against for that particular instance of speech. However, she has

alleged that Dr. Howard-Vital and Dr. Phillips knew of her speech to Mr. Benjamin and Dr.

Aina.[43] Whether this speech was a substantial factor in her termination, orchestrated by Dr.

Hadley, Dr. Phillips, Ms. Harris, and Dr. Howard-Vital,[44] is a question of fact to be resolved at a

later stage in the litigation.[45]

For the reasons stated above, Defendants' motion to dismiss Mrs. Aina's First

Amendment claims will be denied to the extent the claims are based on protected speech as

discussed above. Mrs. Aina has also adequately pleaded that the Defendants acted in concert to

deprive her of her First Amendment rights, and therefore her conspiracy claim may stand to the

same extent as her underlying § 1983 claim.

### B.  Reputation

Mrs. Aina also asserts that after her termination, the individual Defendants caused false

statements to be published about her to the Board of Nursing. These statements occurred after

Mrs. Aina filed a union grievance charging the Defendants with wrongful termination of her

---

[43] Compl. at ¶ 58.

[44] *Id.* at ¶¶ 81–87.

[45] *Zamboni*, 847 F.2d at 79 n.6.

11

employment.[46] She asserts that in doing so, Defendants deprived her of her liberty interest in her reputation without due process of law.

The Third Circuit has held that "to make out a due process claim for deprivation of a liberty interest in reputation, a plaintiff must show a stigma to his reputation *plus* deprivation of some additional right or interest."[47] Courts refer to this holding as the "stigma-plus" requirement. Generally, the process that is due for a deprivation of a liberty interest in reputation is a pre- or post-termination "name-clearing" hearing.[48]

To the extent that Mrs. Aina alleges that "she was deprived of the opportunity for future private or government employment,"[49] her claim must be dismissed.[50] Mrs. Aina also argues that she was fired on December 21, 2012, and that she filed a grievance on January 24, 2013. The defamatory statements (the stigma) occurred after she lost her job (the "plus") and filed the grievance. However, Mrs. Aina fails to argue that she had no opportunity to respond to the allegedly defamatory statements, since they occurred "prior to the conclusion of the grievance proceedings."[51] She argues that the charges were made "without notice," but at some point prior to filing the complaint she received notice, and she has not alleged that she was deprived of an opportunity to respond. Since her remedy would be a name-clearing hearing, and since she has not alleged that the grievance process—pending at the time of the alleged defamatory

---

[46] The Complaint alleges that her grievance was filed January 24, 2012, and that she was terminated on December 21, 2012. Mrs. Aina's Memorandum in response to Dr. Hadley's motion to dismiss corrects the grievance date to 2013.

[47] *Hill v. Borough of Kutztown,* 455 F.3d 225, 236 (3d Cir.2006).

[48] *Matsey v. Westmoreland Cnty.*, 185 F. App'x 126, 133 (3d Cir. 2006).

[49] Doc. No. 15-3 at 13.

[50] *Clark v. Twp. of Falls*, 890 F.2d 611, 620 (3d Cir. 1989) ("The possible loss of future employment opportunities is patently insufficient to satisfy the requirement imposed by [Supreme Court case law] that a liberty interest requires more than mere injury to reputation.").

[51] Compl. at ¶ 112.

statements—was inadequate to clear her name, she has not alleged that she has been deprived of due process of law.

Mrs. Aina's injury to reputation claim and the related conspiracy claim must therefore be dismissed.

## V.    Mrs. Aina's Defamation Claim

Mrs. Aina alleges that the statements that Cheyney University officials and Dr. Hadley made against her before the Board of Nursing amount to the common law tort of defamation. The University defendants move to dismiss on the basis of sovereign immunity. Dr. Hadley moves to dismiss because the allegations are speculative and the statements made were privileged.

### A.  University Defendants

Sovereign immunity bars Mrs. Aina's defamation claim against the University defendants. Sovereign immunity protects government employees to the extent that the State has not waived the doctrine's application and so long as the complained-of act is within the scope of the defendant's employment. The parties agree that the Commonwealth has not waived sovereign immunity for defamation,[52] so the only question is whether the defendants acted within the scope of their employment in allegedly defaming Mrs. Aina. "Conduct of an employee is within the scope of employment if it is of a kind and nature that the employee is employed to perform; it occurs substantially within the authorized time and space limits; [and] it is actuated, at least in part, by a purpose to serve the employer."[53]

---

[52] 1 Pa. C.S. § 2310, 42 Pa. C.S. § 8522.

[53] *Natt v. Labar*, 543 A.2d 223, 225 (Pa. Cmwlth. 1988); *see also Bronson v. Lechward*, 155 Pa. Cmwlth. 206, 210 (1993).

Mrs. Aina alleges that the statements made in the course of her Board of Nursing proceedings were so motivated by retaliatory animus that they were outside the scope of Defendant's employment. She also argues that because the proceedings occurred after her termination, the defamatory statements were not made pursuant to Defendants' supervisory duties. The Court cannot agree.

As for the first contention, that the statements were not made within the scope of the defendants' employment because the statements were defamatory, the argument is overly broad. Although Defendants' job descriptions surely did not include making tortious statements, the test for whether one acted within the scope of one's employment is drawn at a higher level of generality than Mrs. Aina urges. The Court must decide whether filing charges with the Board of Nursing is a task of the kind and nature that the employee is expected to perform. Mrs. Aina does not allege that it was outside the scope of the university Defendants' employment to make such charges, rather, she complains of the way in which they carried out this duty.[54] Nor does it appear to the Court that supervisors of a nurse would act outside the scope of their employment when filing charges that their employee breached employment responsibilities. Therefore, the university Defendants were acting within the scope of their employment when they filed charges before the Board of Nursing.

The timing of Defendants' statements also does not avail Mrs. Aina. The charges appear to have been filed about a month after her termination, and several winter holidays were interposed between the termination and the proceeding.[55] Therefore, the conduct complained of

---

[54] *Cf. Feliz v. Kintock Grp.*, 297 F. App'x 131, 137 (3d Cir. 2008) ("While Feliz may take issue with the manner in which they performed their duties, there can be no question that the Commonwealth defendants were acting within the scope of their employment in the instant case.").

[55] Compl at ¶¶ 89, 111–112 (Termination on December 21, 2012; charges filed after January 24, 2013, but before grievance proceedings were completed).

14

occurred "substantially within" reasonable "time and space limits," assuming the conduct—filing charges before the Board of Nursing—was authorized, a point Mrs. Aina does not dispute.[56]

For the foregoing reasons, Mrs. Aina's state-law defamation claim against the university defendants must be dismissed.

B. *Dr. Hadley*

Dr. Hadley advances two arguments in support of her motion to dismiss Mrs. Aina's defamation complaint. The first is that the allegations of defamation are not sufficiently particularized under the Supreme Court's cases *Ashcroft v. Iqbal*[57] and *Bell Atlantic Corp. v. Twombly*.[58] The second is that her communications to the Board of Nursing were privileged and therefore not actionable. Both arguments fail.

Dr. Hadley argues that because Mrs. Aina alleges facts related to the defamation "on information and belief," they are necessarily "speculative" and based on "mere conjecture."[59] This is incorrect; they may be based instead on "information," on the one hand, and "belief" on the other.[60] While Mrs. Aina has not alleged a great deal of detail relating to the charges filed against her, she has stated who filed them (Dr. Hadley and the university Defendants), what they stated (that she practiced nursing without entering into a collaborative agreement), where they were filed (before the Board of Nursing), when they were filed (some time after January 24, 2013, but before the closure of the grievance proceedings), and why they were filed ("to injure

---

[56] *Natt*, 543 A.2d at 225 (Pa. Cmwlth. 1988).

[57] 556 U.S. 662 (2009).

[58] 550 U.S. 544 (2007).

[59] Doc. No. 12 at 8.

[60] *State Farm Mut. Auto. Ins. Co. v. Ficchi*, 2012 WL 1578247 (E.D. Pa. May 4, 2012) ("Allegations based upon information and belief are permissible, but only if the pleading sets forth specific facts upon which the belief is reasonably based." (internal quotation marks omitted)).

15

and destroy Mrs. Aina's professional reputation").[61] This is enough factual matter to put Dr. Hadley on notice of the claim she must defend against.

Dr. Hadley further argues that the communications were privileged because she "reasonably believe[d] that the recipient shares a common interest in the subject matter and is entitled to know" the privileged material.[62] Dr. Hadley notes that "[c]ommunications which are made on a proper occasion, from a proper motive, in a proper manner, and which are based upon reasonable cause are privileged."[63] However, as the case law that Dr. Hadley cites in support of the proposition that her charges to the Board of Nursing were conditionally privileged makes clear, whether such a statement is privileged is a question of fact, not appropriate for resolution on a motion to dismiss.[64] The propriety of a motive and a manner as well as the reasonableness of a cause are all factual questions that could be resolved at summary judgment, but certainly cannot be now.

For the foregoing reasons, Dr. Hadley's motion to dismiss the defamation count will be denied.

## VI.   Dr. Aina's § 1983 Claim

Dr. Ayedole Aina asserts a claim for violation of his First Amendment rights only against Defendants Michele Howard-Vital, Suzanne Phillips, and Jo-Anne Harris. He alleges that defendants threatened to fire Mrs. Aina because of Dr. Aina's advocacy and that she was in fact fired partly because of Dr. Aina's protected speech.

---

[61] Compl. at ¶¶111–112, 121.

[62] *Donaldson v. Informatica Corp.*, CIV.A. 08-605, 2009 WL 483087 (W.D. Pa. Feb. 25, 2009).

[63] *Moore v. Cobb-Nettleton*, 889 A.2d 1262, 1268 (Pa. Super. Ct. 2005).

[64] *Id.* ("In the instant matter, numerous *facts* led the Court to find that the publication in question was made on a conditionally privileged occasion." (emphasis added)); *Donaldson*, 2009 WL 483087 at *5 ("Informatica's second argument is that even if Hoffman's e-mail is capable of defamatory meaning, it is conditionally privileged and, therefore, Informatica cannot be liable for defamation. This argument is premature.").

As discussed above, to state a claim of retaliation in violation of § 1983, a plaintiff must allege that retaliatory action was taken against the plaintiff in response to the plaintiff's exercise of his or her constitutional rights.[65] The allegations here are thin and not particularly clear, but it appears Dr. Aina alleges that he spoke to Dr. Howard-Vital and to the teachers' union; that as a result of his speech defendants threatened Mrs. Aina with termination; that, also as a result of Dr. Aina's speech Mrs. Aina was terminated; and that as a result of her termination, Dr. Aina suffered economic loss and emotional distress.

The first, and in this case operative, question is whether Dr. Aina spoke as a citizen or as an employee. Dr. Aina was at all times relevant to the Complaint a member of the Leadership Committee and executive council of Cheyney's chapter of APSCUF. He was also a member of Cheyney's Faculty Senate. As the Complaint alleges, "[i]n consultation with University officials, incuding President Howard-Vital and Dr. Phillips, the Leadership Committee monitors the quality and effectiveness of the University's delivery of student services, as it may affect students' retention, including university Health Center services."[66]

The Complaint reveals three instances of speech by Dr. Aina. First, he "kept the APSCUF Leadership Committee and Faculty Senate members informed of the Health Center's difficulties. He and the Committee regularly discussed with President Howard-Vital the lack of administrative oversight, shortage of health center supplies and lapses in physician attendance at the Health Center."[67] He also alleges that he informed the APSCUF Leadership Committee and Faculty Senate of Mrs. Aina's complaints because "the impaired Health Center services would likely impact Cheyney University student retention rates and threaten the status of student

---

[65] *Ballas v. City Of Reading*, 2001 WL 73737, at *7 (E.D. Pa. Jan. 25, 2001).

[66] Compl. at ¶ 19.

[67] *Id.* at ¶ 51.

health."[68] Finally, together with other leaders of ASPCUF, "during their regular meetings with President Howard-Vital," Dr. Aina "pointed out their concerns about the state of the Health Center" to Dr. Howard-Vital.[69]

The Third Circuit has held that the voluntary nature of activities that university faculty members undertake does not categorically insulate professors from retaliation.[70] Moreover, contrary to the argumentation of the parties, the terms of Dr. Aina's Collective Bargaining Agreement with the University do not determine whether his speech is protected.[71] The question remains the "practical one" of whether Dr. Aina spoke "pursuant to his official duties,"[72] which he did if the speech "relates to special knowledge or experience acquired through his job."[73]

In light of the controlling precedent cited above, this Court must conclude that the speech activities that Dr. Aina alleges all occurred in the context of his duties to the APSCUF and Faculty Senate. The APSCUF Leadership committee exists in part to monitor "the quality and effectiveness of the University's delivery of student services," including the Health Center.[74] The Faculty Senate "provide[s] help and advice to University administration . . . to improve the quality of services offered by the University to its students."[75] Moreover, Dr. Aina's reports to Dr. Howard-Vital were made during "regular meetings"[76] All this speech relates to the special

---

[68] *Id.* at ¶ 53.

[69] *Id.* at ¶ 54.

[70] *Gorum v. Sessoms*, 561 F.3d 179, 186 (3d Cir. 2009).

[71] *Emigh v. Steffee*, 442 F. App'x 660, 666 (3d Cir. 2011).

[72] *Garcetti v. Ceballos*, 547 U.S. 410, 421, 424 (2006).

[73] *Gorum* 561 F.3d at 185 (internal quotation marks omitted).

[74] Compl. at ¶ 19.

[75] *Id.* at ¶ 20.

[76] *Id.* at ¶ 54.

18

knowledge and experience that Dr. Aina acquired through his responsibilities to improve student services. The fact that he took on these duties voluntarily and in addition to his responsibilities as a math professor does not take them outside of the employment context; it suggests rather that he was acting as a good employee, not as a citizen.

Because Dr. Aina has failed to allege that he spoke as a citizen, the Court need not decide the close question of whether he has sufficiently alleged retaliation. Dr. Aina's complaint is dismissed for failure to state a claim on which relief may be granted. Because he has alleged no Constitutional violation, his conspiracy claim must be dismissed as well.

## VII.   Conclusion

For the reasons stated above, Mrs. Aina's §§ 1983 and 1985 claims are dismissed only to the extent that they are based on unprotected speech she made as an employee. Mrs. Aina's §§ 1983 and 1985 due process claims are dismissed. Her defamation claim against the university defendants is dismissed. And Dr. Aina's §§ 1983 and 1985 claims are dismissed.

Mrs. Aina may proceed on her First Amendment retaliation and related conspiracy claims to the extent they are premised on speech she made as a citizen on a matter of public concern and to the extent that she has properly alleged retaliatory conduct. She may also maintain her defamation claim against Dr. Hadley. And as Cheyney University has not moved to dismiss her Whistleblower Statute claim, she may maintain that as well.

An appropriate Order follows.

19